## VALLENTINE v. HOLLAND ET AL.

NEW TRIAL: *When Chancery will direct:*

Courts of Chancery will direct a new trial after a judgment at law when the plaintiff can show, first, that his adversary has obtained an advantage that cannot be conscientiously retained; second, that his own conduct has been free from fault or negligence; and, third, that owing to some fraud, accident or mistake not imputable to him or his attorney, he was not present at the trial nor able to make his defence there; or if present, that he was prevented from moving for a new trial because the judge left, or the term lapsed before it could be made or disposed of; or that from some other peculiar circumstance he is without remedy at law.

APPLICATION: A defendant's motion for new trial was continued by the Court to the next term, and then was overruled and he appealed to the Supreme Court, where his appeal was dismissed, because the Circuit Court had no power over the motion after the lapse of the term. HELD: That the defendant was not responsible for the continuance of the motion without his application, by which he lost his appeal, and there appearing probable error against him at the trial in the Circuit Court, Chancery should give him a new trial. EAKIN, J., dissenting.

APPEAL from Chicot Circuit Court in Chancery.

Vallentine v. Holland et al.

Hon. T. F. SORRELLS, Circuit Judge.

*U. M. & G. B. Rose* for appellant.

The power of a Court of Chancery to grant a new trial has been established in *Leigh v. Armond*, 35 *Ark.*, 123. It was there decided that where, by any accident, it happened without default of the complainant, that the Court failed to dispose of the motion for a new trial at the proper term, a court of equity would interpose and grant relief.

Appellant had a good defense to the original cause, and the Court clearly erred in holding the lien of a mortgage superior to that of a landlord under a prior lease. *Meyer v. Bloom*, 37 *Ark.*, 43; *Buck v. Lee*, 36 *Ark.*, 525; *Watson v. Johnson*, 33 *Ark.*, 737.

*Thos. B. Martin* for appellees.

The matter from which appellant seeks to be relieved has been twice tried by courts of law of competent jurisdiction, and decided adversely to him. He has had *two* separate days in court on these same issues and failed to establish his defense. A court of equity will not interpose to grant a third trial. All it could possibly do would be to compel Bergman to consent to a setting aside his judgment, or perpetually enjoin him. *Pelham v. Moreland*, 11 *Ark.*, 443.

All the *accident* there was in this case was that appellant and his counsel did not know that by a continuance, without a disposition of the motion for new trial until the succeeding term, the judgment became final. There is no ground of equitable relief in the bill. *Hilliard on Inj.*, p. 174; 11 *Ark.*, 443; 6 *Peters*, 658; 8 *Yerg.*, 459; *Young v. Downes*, 5 *Litt.*, 9.

SMITH, J. This was a bill in equity for a new trial upon the ground that the Court had, in an action at law,

Vallentine v. Holland et al.

without fault of the plaintiff, deprived him of his constitutional right of appeal, by failing to pass upon his motion for new trial during the term at which its decision was rendered.

The appellee, Bergman, had brought replevin for five bales of cotton before a Justice of the Peace against appellant and one Alexander De Valcourt. He recovered judgment in the Justice's court, and again on appeal, in the Circuit Court. Appellant applied for a new trial in due time, but the further consideration of the motion was continued until the succeeding term of the court, when it was overruled. Appellant then brought the case here, where his appeal was dismissed because the lapse of the term without disposing of his motion for new trial, had deprived the Court of all power over it.

Bergman then sued out an execution, which was levied upon the property of appellant, who seeks to enjoin the execution of said judgment.

New trial. When Chancery will direct. Courts of Chancery will direct a new trial after a judgment at law, when the complainant can show, first, that his adversary has obtained an advantage that cannot be conscientiously retained, as that a successful plaintiff had no cause of action, or an unsuccessful defendant had a meritorious defense; second, that his own conduct has been free from fault and unmixed with negligence; third, that, owing to some fraud, accident or mistake, not imputable to him or his attorney, he was not present at the trial, nor able to make his defence there; or if there, that he was prevented from moving for a new trial because the Judges dispersed or the term lapsed before it could be made or disposed of; or that, on account of the existence of some other peculiar circumstance, he is without remedy at law. The subject is learnedly discussed in a note to 19 *American Decision,* 609.

Vallentine v. Holland et al.

The rule was recognized and applied by this Court in *Leigh v. Armor*, 35 *Ark.*, 123, where the Judge was suddenly taken ill, and for that reason the motion for a new trial was left undecided.

In *Oliver v. Pray*, 4 *Ohio*, 175, where a party had failed to give a sufficient appeal bond, owing to the mistake or omission of the clerk who took it, and the Supreme Court had for that reason quashed the appeal, a new trial was granted on the appellant's showing probable ground that he had a case at law.

The counsel for Bergman suggests that, as the record entry shows a continuance of the cause without objection on the part of Vallentine, the only accident that there could have been about it was the ignorance of Valentine or his counsel that the judgment became final after the end of the term. But as the continuance does not appear to have been granted upon the application of either of the the parties, it will be presumed to have been done of the Court's own motion, for some cause that appeared satisfactory to it, as a want of time to consider it before adjournment. It is the act of the Court, which ought not to prejudice the rights of any one.

The only remaining question is whether the bill shows that the defendants in the original action had a meritorious defense. From the transcript of the record and proceedings attached to the bill, which includes a bill of exceptions setting out the evidence adduced on the former trial, it appears to have been a contest between parties, one of whom claimed to hold the proceeds of the cotton in controversy under a landlord's lien, and the other under a mortgage of the crop executed subsequently to the lease. The Circuit Court decided that the mortgagee held the superior lien. Without prejudging the merits,

there is a sufficient probability that the Court committed an error to warrant another trial.

The decree, dismissing the bill, is reversed and the cause remanded with directions to overrule the demurrer to the bill, and for further proceedings.

### DISSENTING OPINION BY

EAKIN, J.   Under our system Courts of Chancery have no supervisory control of a mandatory nature over the proceedings of Courts of law.   They may enjoin suitors from prosecuting causes, and executive officers from executing judgments in civil cases, but, as a general rule, they cannot act upon the Court itself and direct its proceedings.

It is somewhat difficult to conceive how a Chancellor could coerce a Circuit Judge to grant and conduct a new trial in a common law case, if the latter should prove recalcitrant.   Fortunately, the unseemly conflict can arise only in one county and will probably never arise there, but the principle is not affected by present security, and we should be cautions in establishing precedents, which may become mischievous under other conditions.

This Court had occasion to consider this matter very seriousiy in the case of *Leigh v. Armor*, 35 *Ark*, 123, and its members found it very embarrassing to determine *how* a new trial should be had—whether by directions from the Chancellor to the Circuit Court to reinstate the case upon its docket and conduct a new trial, which is altogether a different thing from an issue sent out of Chancery to be tried for the advice of the Chancellor; or whether it would be better that the Chancellor himself, having acquired jurisdiction by the accident and necessity for relief, should retry the whole merits, with the aid of a jury if required.   The difficulty was not then solved, but this Court contented itself with simply declaring that

Vallentine v. Holland et al.

a new trial should be had, if the bill were true, and remitting it to the good sense and discreet consideration of the Circuit Judge and attorneys, to carry out the principal object. The Circuit Judge being himself Chancellor, no conflict could ensue.

The embarrassment and uncertainty of the practice, is a potent argument for confining it to the plainest and most equitable cases, demanding relief from hardships. The occasions for it should be rare, and it ought not to be encouraged.

It does not seem to me that this is a case of unavoidable accident, or that it has such equitable elements as to invoke the exercise of the extraordinary and somewhat undefined power of the Chancellor to direct a new trial. The case of *Leigh v. Armour* was: There by act of Providence the Judge was rendered physically unable to act upon the motion for a new trial. There was no laches, default or mistake of law.

In this case there does not appear to have been anything more than a general misapprehension of the law and proper practice in the case, leading to the defeat of the ultimate appeal intended. No one was prevented by accident or superior force from doing anything, which it appears he intended doing. So far as the record shows the Judge thought it proper to continue the motion, and there is no showing of dissent. All, perhaps, acted under the belief that it might be properly determined at the next term, and would have the effect to suspend the judgment. The Judge must be presumed to have so thought, and the appellant certainly did, since he prosecuted his appeal upon the motion after it was finally overruled. It was simply a mistake of the legal effect of the proceeding. Chancery does not ordinarily relieve against such mishaps. It would be bad policy to do so. I am

not in favor of extending the principle of the case of *Leigh v. Armour,* but rather to consider it exceptional.

With deference to the views of my associates I think the demurrer was properly sustained, and that the dismissal of the bill was not an erroneous exercise of the judicial discretion of the Chancellor.